IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI

| | | |
|---|---|---|
| SAVANNAH MOTON, | : | Case No. 1:23-cv-703 |
| Plaintiff, | : | Judge Matthew W. McFarland |
| v. | : | |
| AMER SPORTS WINTER & OUTDOOR COMPANY, | : | |
| Defendant. | : | |

## ORDER AND OPINION

This matter is before the Court on Defendant's Motion for Summary Judgment (Doc. 13) and Plaintiff's Motion for Partial Summary Judgment (Doc. 14). Both motions have been fully briefed. (*See* Docs. 15, 16, 17, 18.) Thus, this matter is ripe for the Court's review. For the following reasons, Defendant's Motion for Summary Judgment (Doc. 13) is **GRANTED**; Plaintiff's Motion for Partial Summary Judgment (Doc. 14) is **DENIED**.

## FACTS

### I. Plaintiff's Employment

Defendant Amer Sports Winter & Outdoor Company ("ASWO") is a distributor of outdoor apparel; one of the brands it distributes is Arc'teryx. (Marshall Dep., Doc. 11-1, Pg. ID 332.) Plaintiff Savannah Moton worked for Defendant from November 2021 through June 2022. (Moton Dep., Doc. 10-1, Pg. ID 87, 166-67.) Plaintiff began her position at ASWO after finding a job posting for Recruiter-Brand Marketing for Arc'teryx on

LinkedIn. (*Id.* at Pg. ID 79; Job Listing, Doc. 10-1, Pg. ID 219-22.) In her role, Plaintiff led the attraction and acquisition of new hires for Arc'teryx, and she was involved in the recruiting process from beginning to end. (Moton Dep., Doc. 10-1, Pg. ID 81; Job Listing, Doc. 10-1, Pg. ID 219-22.) As part of the process, Plaintiff would meet with a Hiring Manager to discuss the position, post a job listing to find qualified applicants, and then work with the Hiring Manager to interview and identify the best candidate for the position. (Moton Dep., Doc. 10-1, Pg. ID 91-94.) Accordingly, Plaintiff's position required her to work closely with Hiring Managers. (*Id.* at Pg. ID 95.)

During her time at ASWO, Plaintiff's supervisor, Joel Brideau, received complaints from the Hiring Managers with whom Plaintiff worked. (Moton Dep., Doc. 10-1, Pg. ID 110.) Generally, the Hiring Managers complained of the following issues with Plaintiff's performance: (1) Plaintiff presented poor quality candidates; (2) Plaintiff was not interacting enough with the Hiring Managers during the hiring process; and (3) Plaintiff was struggling to properly prioritize her assignments. (*Id.* at Pg. ID 151, 109-11.) Specifically, one Hiring Manager from the Marketing Department, Lindsey Matese Kepley, cited communication issues with Plaintiff and copied Brideau on an email exchange between the two. (*Id.* at Pg. ID 114-16.) Because of this, Brideau eventually told Plaintiff, in a one-on-one meeting, that she would no longer work with the Marketing Department on hiring assignments and needed to work on her "soft skills." (*Id.* at Pg. ID 129, 133, 136-39.) Brideau also expressed these criticisms to Mariah Marshall in an email. (Brideau Dep., Doc. 12-1, Pg. ID 461.) Brideau explained that he had sent Marshall this list of concerns as a part of the discussions he had with Plaintiff about her work

2

performance because Marshall was the business partner for People and Culture. (*Id.*) Brideau stated that the logical next step would have been a performance improvement plan. (*Id.* at Pg. ID 463.) Plaintiff believed these criticisms were unjustified. (Moton Dep., Doc. 10-1, Pg. ID 136-39.)

## II. Plaintiff's Internal Complaints and Investigation

After learning that she would no longer work with the Marketing Department, Plaintiff complained to ASWO's Human Resources Department; Marshall investigated the internal complaint. (Human Resources Complaint, Doc. 10-1, Pg. ID 228-29, 234; Marshall Dep., Doc. 11-1, Pg. ID 270-72, 276, 582-88.) In her complaint, Plaintiff told Marshall that she felt "extremely uncomfortable" during meetings with Brideau and also stated that she believed she was a victim of discrimination. (Moton Dep., Doc. 10-1, Pg. ID 136-39; Human Resources Complaint, Doc. 10-1, Pg. ID 228-29.) She reiterated this claim of discrimination in a follow-up email, where she told Marshall "the only conclusion that can be reasonably drawn for my so-called insufficient performance is discriminatory in nature." (Marshall Dep., Doc. 11-1, Pg. ID 292-93; Investigation Notes, Doc. 10-1, Pg. ID 234-40.) Marshall interviewed Brideau as a part of the investigation, and he provided a list of the issues he had with Plaintiff, along with the reasons he altered her work assignments. (Investigation Notes, Doc. 10-1, Pg. ID 234-40.) Marshall also interviewed Kepley from the Marketing Department, who detailed further issues she had with Plaintiff's inability to receive constructive feedback well. (*Id.*)

Based on the investigation, Marshall found that Plaintiff was not the victim of discrimination and had legitimate performance issues which Brideau addressed. (Moton

3

Dep., Doc. 10-1, Pg. ID 159; Investigation Notes, Doc. 10-1, Pg. ID 234-40; Marshall Dep., Doc. 11-1, Pg. ID 297-98.) ASWO transferred Plaintiff to a new manager, Autumn Lightfoot, and informed her that she would no longer report to Brideau. (Marshall Dep., Doc. 11-1, Pg. ID 301-02.)

### III. Performance Issues and Termination

While working for Lightfoot, Plaintiff began recruiting for IT-related positions and received a significant number of new open positions to fill. (Marshall Dep., Doc. 11-1, Pg. ID 302-03; Moton Dep., Doc. 10-1, Pg. ID 161-63.) Plaintiff had weekly meetings with Lightfoot; during one of these meetings, a few weeks after the investigation, Lightfoot informed Plaintiff that she had received complaints regarding Plaintiff's communications issues with some Hiring Managers. (Moton Dep., Doc. 10-1, Pg. ID 164.) Plaintiff then met with Lightfoot and Marshall, who jointly notified her that ASWO was terminating her, effective June 17, 2022. (*Id.*; *see also* Termination Letter, Doc. 10-1, Pg. ID 241.) Marshall had reviewed and approved the termination letter before Plaintiff received it. (Marshall Dep., Doc. 11-1, Pg. ID 311.) As part of her job, Marshall testified that she typically reviews complaints and documented performance issues to then make a recommendation regarding termination to the department head. (*Id.* at Pg. ID 310.)

## PROCEDURAL POSTURE

On October 27, 2023, Plaintiff filed her Complaint against Defendant, bringing claims of race discrimination and retaliation under Title VII, 42 U.S.C. § 2000e-3(a) and Ohio Revised Code § 4112. (Compl., Doc. 1, ¶¶ 29-43.) The parties engaged in discovery and filed their dispositive motions on April 18, 2025. Defendant seeks summary judgment

4

in its favor on all claims, while Plaintiff seeks summary judgment in her favor only on her retaliation claims. (Defendant's Motion, Doc. 13; Plaintiff's Motion, Doc. 14.)

## LAW

When there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law, the district court shall grant summary judgment. Fed. R. Civ. P. 56(a). The moving party has the burden to conclusively show that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). If the moving party meets that burden, then it becomes the nonmoving party's responsibility to point to specific facts showing a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A court is under no obligation to search the record for genuine issues of material fact. *Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1087 (6th Cir. 1996).

Moreover, a "mere scintilla" of evidence in support of the nonmoving party's position is not enough to avoid summary judgment. *Daniels v. Woodside*, 396 F.3d 730, 734 (6th Cir. 2005). Rather, to preclude summary judgment, the nonmoving party must put forth probative evidence on which a jury could reasonably reach a verdict in that party's favor. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy*, 39 F.3d at 1347. If the nonmoving party fails to make the necessary showing for an element on which it has the burden of proof, then the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323.

"This standard of review remains the same for reviewing cross-motions for summary judgment." *Ohio State Univ. v. Redbubble, Inc.*, 989 F.3d 435, 441 (6th Cir. 2021). Accordingly, in light of the dueling motions for summary judgment filed in this matter,

the Court must consider "each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Id.* at 442 (quotation omitted).

## ANALYSIS

As a preliminary matter, the Court will address the evidentiary issue that Plaintiff raised in response to Defendant's Motion. (*See* Response, Doc. 16, Pg. ID 711.) As evidence for its legitimate reason behind Plaintiff's discharge, Defendant relies on a statement from Plaintiff's second supervisor, Lightfoot. (*See* Motion, Doc. 13, Pg. ID 632-33.) Lightfoot told Plaintiff that she had received complaints from Hiring Managers about Plaintiff's lack of communication; following that discussion, Defendant terminated Plaintiff. (Moton Dep., Doc. 10-1, Pg. ID 164.) Plaintiff argues that this statement is inadmissible hearsay, which the Court cannot consider when deciding a motion for summary judgment. (Response, Doc. 16, Pg. ID 711 (quoting *Tranter v. Orick*, 460 F. App'x 513, 514 (6th Cir. 2012)).) Furthermore, Plaintiff argues that Defendant failed to identify the decisionmaker who terminated Plaintiff, but that this unidentified decisionmaker relied on this hearsay statement when deciding to terminate her. (*Id.* at Pg. ID 711-12.)

Defendant responds that this statement is not hearsay under Federal Rule of Evidence 801(d)(2)(D). (Reply, Doc. 17, Pg. ID 735-36.) This rule provides that a statement "made by the party's agent or employee on a matter within the scope of that relationship and while it existed" is not hearsay if offered against the opposing party. Fed. R. Evid. 801(d)(2)(D). Defendant asserts that Lightfoot is an employee or agent of Defendant and made the statement within the scope of her employment. (Reply, Doc. 17, Pg. ID 735-36.)

6

The Court, however, disagrees with Defendant's understanding of Rule 801(d)(2)(D). "A statement is non-hearsay if it is made by an opposing party and is offered against the opposing party." *Williamson v. Lorain Cnty.*, No. 1:23-CV-1507, 2024 WL 4336375, at *2 (N.D. Ohio Sept. 27, 2024). Here, Defendant is attempting to offer the words in question from their own employee, Lightfoot. Accordingly, Defendant's proffer of this declaration from its own agent does not implicate Rule 801(d)(2)(D). *See United States v. Daneshvar*, 925 F.3d 766, 778 (6th Cir. 2019) (explaining that the party incorrectly sought to use his own statements "on his behalf, not against an opposing party"); *Midfield Concession Enters., Inc. v. Areas USA, Inc.*, 130 F. Supp. 3d 1122, 1134 (E.D. Mich. 2015) (similar). The statement is therefore inadmissible hearsay.

Having resolved the evidentiary issue, the Court now proceeds with examining the parties' Motions. Courts analyze Title VII claims and Ohio Civil Rights Act claims under the same standard. *Nelson v. Ball Corp.*, 656 F. App'x 131, 133 (6th Cir. 2016); *see also Newman v. Federal Exp. Corp.*, 266 F.3d 401, 406 (6th Cir. 2001). In such cases, when a plaintiff has not presented any direct evidence of discrimination, like here, the *McDonnell Douglas* burden-shifting framework applies. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Texas Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248 (1981). Under this framework, a plaintiff faces the initial burden of presenting a prima facie case, which creates a rebuttable presumption of discrimination that requires the defendant "to articulate some legitimate, nondiscriminatory reason for taking the challenged action." *Johnson v. Kroger Co.*, 319 F.3d, 866 (6th Cir. 2003) (quoting *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572-73 (6th Cir. 2000)) (cleaned up). Once the defendant satisfies this burden,

7

the plaintiff must prove that the defendant's proffered reason was a "pretext to hide unlawful discrimination." *Id.* (quoting *Johnson,* 215 F.3d at 573) (cleaned up). Defendant asserts that it is entitled to summary judgment on all of Plaintiff's discrimination claims, while Plaintiff moves for summary judgment only as to her retaliation claims. The Court will analyze each set of claims in turn.

I. **Plaintiff's Race Discrimination Claims**

Defendant states that Plaintiff's race discrimination claims fail as a matter of law because she cannot demonstrate a prima facie case. (Motion, Doc. 13, Pg. ID 631.) To establish a prima facie case of discrimination, Plaintiff must demonstrate: (1) she is a member of a protected class; (2) she was qualified for the position and performed it satisfactorily; (3) she suffered an adverse employment action; and (4) she was treated differently than similarly situated, non-protected employees, or was replaced by a person outside the protected class. *Laster v. City of Kalamazoo,* 746 F.3d 714, 727 (6th Cir. 2014). To restate the fourth element, Plaintiff must show that her race was the "but for" cause of the adverse action. *Bostock v. Clayton County, Georgia,* 590 U.S. 644, 656 (2020). Defendant attacks both the second and fourth elements of Plaintiff's case, arguing that no genuine dispute of material fact exists as to Plaintiff's discrimination claims. Alternatively, if Plaintiff presents a prima facie case, shifting the burden to Defendant, then Defendant argues that it had a legitimate, non-discriminatory reason for firing Plaintiff and is still entitled to summary judgment.

### A. Second Element: Qualification for the Position

Beginning with Defendant's attack on the second element, Defendant claims that the record clearly shows Plaintiff did not perform satisfactorily in her position. (Defendant's Motion, Doc. 13, Pg. ID 632 (citing *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1022 (6th Cir. 2000)).) Defendant notes that Plaintiff failed to meet her work performance expectations, despite multiple attempts on ASWO's part to help her correct the issues. (*Id.*) For instance, Brideau told Plaintiff that he had received several complaints from Hiring Managers; he also documented Plaintiff's deficient performance and eventually reassigned Plaintiff to work with different Hiring Managers. (*Id.* (citing Moton Dep., Doc. 10, Pg. ID 109-11, 139).) Then, while working under her reassignment, Plaintiff was discharged. (*Id.* at Pg. ID 632-33 (citing Moton Dep., Doc. 10, Pg. ID 164).) Thus, according to Defendant, Plaintiff was not qualified for her position as required to prove her prima facie case.

In response, Plaintiff argues that she has met the second element of her claims. (Response, Doc. 16, Pg. ID 713.) She contends that Defendant distorts the law when it states that she failed to meet the qualifications of the position. (*Id.*) Defendant provides evidence that Plaintiff did not rise to the company's legitimate expectations and had poor performance. But, Plaintiff argues, her burden at the prima facie stage "is the minimal burden of producing evidence to show her . . . base-level qualification for the position." (*Id.* at Pg. ID 714 (citing *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 662-63 (6th Cir. 2000)).) According to Plaintiff, the record is clear that she was a well-qualified recruiter when she was hired. (*Id.*) Defendant does not dispute this, nor does it address this

9

argument in its Reply. The Court agrees with Plaintiff. As the Sixth Circuit makes clear in *Cline v. Catholic Diocese of Toledo*, courts analyzing the second element should look at the plaintiff's employment record "prior to the events that spurred" the adverse employment actions. 206 F.3d at 662; *see also Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 574 (6th Cir. 2003) (en banc). Thus, no issue of material facts exists as to whether Plaintiff was qualified for the job when she was hired.

### B. Fourth Element: Causal Connection between Race and Termination

Defendant also asserts that Plaintiff "produced no evidence tending to show that the outcome [of her employment] would have changed, 'but for' her race." (Defendant's Motion, Doc. 13, Pg. ID 631.) Defendant points to the record, where Plaintiff admits that she is "not sure" whether Kepley treated her differently than other employees. (*Id.* at Pg. ID 632 (citing Moton Dep., Doc. 10, Pg. ID 148).) Additionally, Plaintiff admitted that "no racial slurs were directed towards her in the course of her employment with Defendant." (*Id.* (citing Moton Dep., Doc. 10, Pg. ID 166).) In sum, Defendant contends that Plaintiff has failed to establish the fourth element of her claims.

In response, Plaintiff argues that, when establishing her prima facie case, "false responses in discovery, particularly those related to the decisionmaker and reasons for termination, raise an inference of discrimination." (Response, Doc. 16, Pg. ID 714-15 (citing *Coburn v. Rockwell Automation, Inc.*, 238 F. App'x 112, 124 (6th Cir. 2007)).) Plaintiff states that Defendant has "perfunctorily argue[d]" that Plaintiff had performance issues in its Motion, but such a claim is "belied by [Defendant's] failure to cite any evidence in

10

support of that proposition." (*Id.* at Pg. ID 710.) Specifically, Plaintiff states that Defendant failed to identify the decisionmaker for the termination. (*Id.*)

However, the Court finds several issues with this argument. First, this is a misstatement of the law. In *Coburn*, the court found that false responses "create[d] a genuine issue as to pretext," and were not used to analyze whether the plaintiff had established a prima facie case. 238, F. App'x at 123-24. In fact, in *Coburn*, the plaintiff established his prima facie case with direct evidence of discrimination, so the *McDonnell-Douglas* burden-shifting framework never applied. *Id.* at 119-20. Furthermore, while Plaintiff claims that Defendant has failed to present the reasons for her termination, this is false. Marshall testified that she discussed performance gaps, like lack of communication, and analyzed this feedback when making her recommendation to the department head about Plaintiff's termination. (Marshall Dep., Doc. 11-1, Pg. ID 306-08.) That department head then makes the official decision based on her recommendation. (*Id.*) Her testimony thus provides specific reasons for Plaintiff's termination and reveals the decision-making process behind it. So, while Plaintiff claims that Defendant's contradictory discovery responses create an inference of discrimination, establishing her fourth element, the Court finds that her argument is without merit.

Instead, Defendant points out, and the Court agrees, that Plaintiff has not brought forth any evidence showing that she was fired because of her race. Courts have granted summary judgment where the plaintiff could not satisfy the fourth element of a discrimination claim that a comparable, non-protected person was treated better. *See Mitchell v. Toledo Hosp.*, 964 F.2d 577, 581-82 (6th Cir. 1992) (affirming district court's

11

decision on summary judgment where plaintiff could only point to mere allegations of discrimination). The record here is devoid of any testimony from Plaintiff describing similarly situated individuals who experienced better treatment, or who remained employed. And, Plaintiff herself could not say whether other recruiters were treated differently. (*See* Moton Dep., Doc. 10-1, Pg. ID 148.) Simply put, Plaintiff has not put forth any evidence showing a causal link between her race and her termination; she cannot satisfy the fourth element of her prima facie case. Since Plaintiff's claim fails at the first stage of the *McDonnell-Douglas* framework, the burden has not shifted to Defendant to defend its proffered reason for termination. Without any evidence showing that non-protected individuals were treated differently than Plaintiff, there is no genuine dispute of material fact as to whether Plaintiff was fired because of her race. Defendant is thus entitled to summary judgment on the race discrimination claims.

## II. Plaintiff's Retaliation Claims

Plaintiff's remaining claims state that Defendant retaliated after she filed her internal complaint alleging race discrimination. (Compl., Doc. 1, ¶¶ 36-43.) To establish a prima facie case for retaliation under either Title VII or Ohio Revised Code § 4112, Plaintiff must prove that: (1) she engaged in a protected activity under Title VII; (2) Defendant knew she exercised her protected rights; (3) Defendant took an adverse employment action against her; and (4) Plaintiff's protected activity was the direct cause of the adverse employment action. *Kenney v. Aspen Techs., Inc.*, 965 F.3d 443, 448 (6th Cir. 2020) (citing *Laster v. City of Kalamazoo*, 746 F.3d 714, 730-31 (6th Cir. 2014)). If Plaintiff successfully establishes her prima facie case, then the *McDonnell Douglas* framework

12

shifts the burden to Defendant to prove a "legitimate, nondiscriminatory reason for its action." *McDonnell Douglas Corp.*, 411 U.S. at 802. And, if Defendant satisfies that burden, then Plaintiff must demonstrate that Defendant's proffered reason is pretext for discrimination. *Id.* at 804.

Both parties seek summary judgment on these retaliation claims. Defendant argues that Plaintiff's retaliation claims fail because she "produced no evidence of a causal connection" between the protected activity and her termination. (Defendant's Motion, Doc. 13, Pg. ID 634.) Conversely, Plaintiff argues that she is entitled to summary judgment on these claims because she has established her prima facie case and can prove that Defendant's proffered reason for terminating her was a pretext for discrimination. (Plaintiff's Motion, Doc. 14, Pg. ID 646.) Neither party disputes that Plaintiff has satisfied the first three elements of the retaliation claims; accordingly, the Court's discussion will focus on the final element: the causal connection. (*See* Defendant's Motion, Doc. 13, Pg. ID 634; Plaintiff's Motion, Doc. 14, Pg. ID 646-48.)

Defendant's argument mirrors its reasoning for summary judgment on the discrimination claims. (Defendant's Motion, Doc. 13, Pg. ID 634-35.) According to Defendant, Plaintiff produced no evidence to show that her complaint to Human Resources was the "but for" cause of her discharge. (*Id.*) For starters, Plaintiff's complaint involved Brideau, but he did not assist in the decision to terminate her. (*Id.*) And, there is no other evidence on the record showing that her internal complaint led to her discharge. (*Id.* at Pg. ID 635.) The best Plaintiff can show is a temporal proximity between the complaint and her termination, but "mere temporal proximity alone is not sufficient to

13

establish a claim for retaliation." (*Id.* at Pg. ID 634 (citing *Wasek v. Arrow Energy Sercvs.*, 682 F.3d 463, 471-72 (6th Cir. 2012)).) Indeed, the Sixth Circuit emphasized in *Wasek* that it has "repeatedly cautioned against inferring causation based on temporal proximity alone." 682 F.3d at 471-72.

Plaintiff responds, and argues in her own Motion, that the Sixth Circuit has held that when the adverse action occurs very soon after the employer learns of the protected activity, such temporal proximity is sufficient to show a causal connection (Plaintiff's Motion, Doc. 14, Pg. ID 649 (citing *Seeger v. Cincinnati Bell Telephone Co., LLC*, 681 F.3d 274, 284 (6th Cir. 2012)); Plaintiff's Response, Doc. 16, Pg. ID 707.) Specifically, the Sixth Circuit has found a ten-week gap to be the cut-off for establishing a causal connection based on temporal proximity alone. (Plaintiff's Motion, Doc. 14, Pg. ID 649 (citing *Stein v. Atlas Indus., Inc.*, 730 F. App'x 313, 319 (6th Cir. 2018)).) Furthermore, Plaintiff argues that *Wasek*, which Defendant cites, "actually ruled that an intervening act destroyed any causation established by temporal proximity." (Plaintiff's Response, Doc. 16, Pg. ID 707.) Therefore, Plaintiff asserts, the four-week gap between her internal complaint and her termination is sufficient to establish a causal connection on her retaliation claims.

Defendant, however, seeks to differentiate Plaintiff's case from the other Sixth Circuit cases that found close temporal proximity alone created an inference of a causal connection. (Defendant's Response, Doc. 15, Pg. ID 683; Defendant's Reply, Doc. 17, Pg. ID 739.) Specifically, Defendant points out that "[Plaintiff's] job was already in jeopardy before she complained about her supervisor." (Reply, Doc. 17, Pg. ID 739.) In fact, the Sixth Circuit has cautioned that "employees who see the proverbial writing on the wall

14

that they are about to be fired should not be able to use Title VII protections to insulate themselves from adverse employment actions that were previously contemplated." (*Id.* (quoting *Tharp v. Apel Int'l, LLC,* No. 21-6070, 2022 WL 2981770, at *3 (6th Cir. July 28, 2022) (cleaned up)).) As such, courts "have held that causation is lacking when an employer follows a pre-existing line of action regardless of the employee's protected action." (*Id.* (citing *Tharp*, 2022 WL 2981770, at *3).)

Defendant likens this logic to Plaintiff's case, where her poor job performance was "raised repeatedly by her managers and constituents" before she submitted her complaint. (Defendant's Reply, Doc. 17, Pg. ID 740; *see also* Defendant's Response, Doc. 15, Pg. ID 684.) In fact, Defendant highlights that, before Plaintiff filed her internal complaint, Brideau had emailed Marshall a list of performance-related issues he had compiled. (Defendant's Response, Doc. 15, Pg. ID 684; *see also* Marshall Dep., Doc. 11-1, Pg. ID 282; Brideau Dep., Doc. 12-1, Pg. ID 461-63.) Brideau and Marshall explained that they would have met to discuss these issues. (Marshall Dep., Doc. 11-1, Pg. ID 285-86; Brideau Dep., Doc. 12-1, Pg. ID 462.) They both indicated that the likely next step would have been a performance improvement plan, and Marshall even indicated that termination could be a potential outcome given the complaints. (Brideau Dep., Doc. 12-1, Pg. ID 463; Marshall Dep., Doc. 11-1, Pg. ID 285.) Plaintiff does not address this argument in her Reply but merely restates that temporal proximity alone can be sufficient. (*See* Plaintiff's Reply, Doc. 18, Pg. ID 756.)

The Court finds Defendant's argument compelling. The Sixth Circuit has established that employees "who see the proverbial writing on the wall that they are

15

about to be fired" cannot avoid adverse actions by engaging in protected activity. *Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497, 507 (6th Cir. 2014) (citing *Univ. of Texas Southwester Med. Ctr. V. Nassar*, 570 U.S. 338, 358 (2013)); *see also Tharp*, 2022 WL 2981770, at *3. Courts, therefore, should address these situations by following precedent set by the Supreme Court: "[w]hen the employer proceeds along lines previously contemplated, [courts] must not take the temporal proximity of the adverse employment action as evidence of causality." *Id.* (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001)) (cleaned up).

Here, Marshall and Brideau testified that Brideau had compiled a lengthy list of performance issues which began before Plaintiff filed her internal complaint. (Brideau Dep., Doc. 12-1, Pg. ID 463; Marshall Dep., Doc. 11-1, Pg. ID 285.) And, they both indicated that a performance improvement plan was the next step, with Marshall stating that termination could also be likely given the significant performance gaps, especially if improvement did not seem possible. (Brideau Dep., Doc. 12-1, Pg. ID 463; Marshall Dep., Doc. 11-1, Pg. ID 285.) Thus, Plaintiff's termination, after Defendant reassigned her in an attempt to help, represents Defendant proceeding "along lines previously contemplated." *Montell*, 757 F.3d at 507. Although Plaintiff disputes that she had performance issues after she left Brideau's supervision, Marshall testified that she discussed "performance gaps," like lack of communication and failing to present adequate candidates, with Lightfoot when making her recommendation to terminate Plaintiff. (Marshall Dep., Doc. 11-1, Pg. ID 306-08.) Accordingly, temporal proximity of Plaintiff's complaint and termination alone cannot prove causality. Without evidence of

16

causality, Plaintiff has failed to show a prima facie case of retaliation. Once again, the Court may end its analysis here. Defendant is entitled to summary judgment on these claims. *See Tharp*, 2022 WL 2981770, at *4 (affirming summary judgment where plaintiff failed to show causality with temporal proximity because employer proceeded along previously contemplated lines).

## CONCLUSION

Based on the foregoing reasons, the Court **ORDERS** the following:

1. Defendant's Motion for Summary Judgment (Doc. 13) is **GRANTED**;

2. Plaintiff's Motion for Partial Summary Judgment (Doc. 14) is **DENIED**;

3. Summary judgment is **ENTERED** in favor of Defendant on all of Plaintiff's claims;

4. This case is **TERMINATED** from the Court's docket.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _/s/ Matthew W. McFarland_
JUDGE MATTHEW W. McFARLAND